Jennifer Witherell Crastz (SBN 185487)
Christopher D. Crowell (SBN 253103)
HEMAR, ROUSSO & HEALD, LLP
15910 Ventura Boulevard, 12th Floor
Encino, California 91436
Telephone: (818) 501-3800
Facsimile: (818) 501-2985
E-mail: jcrastz@hrhlaw.com
           ccrowell@hrhlaw.com

Attorneys for Plaintiff
KNOBBE, MARTENS, OLSON & BEAR LLP,
a California limited liability partnership

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| KNOBBE, MARTENS, OLSON & BEAR LLP, a California limited liability partnership,<br><br>                    Plaintiff,<br><br>vs.<br><br>AESTHETICS BIOMEDICAL, INC., a Delaware corporation,<br><br>                    Defendant. | Case No.<br><br>COMPLAINT FOR<br><br>1.  BREACH OF CONTRACT<br>2.  BREACH OF CONTRACT<br>3.  UNJUST ENRICHMENT<br>4.  ACCOUNT STATED |

## JURISDICTION

1.      The Court has original jurisdiction over this action because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a).

2.      Plaintiff Knobbe, Martens, Olson & Bear LLP is a limited liability partnership organized and existing under the laws of the State of California. Plaintiff has 158 equity partners. Of these partners, 139 are citizens of State of California, nine are citizens of the State of Washington, four are citizens are of the State of Virginia, two are citizens of the State of New York, two are citizens of the District of Columbia, one is a citizen of the State of Florida, and one is a citizen of the State of Maryland.

3.      On information and belief, Defendant Aesthetics Biomedical Inc. ("ABM") is a corporation organized and existing under Delaware law with its principal

place of business in Phoenix, Arizona.

CLAIMS FOR RELIEF

A.    The Parties

4.    Plaintiff is one of the nation's leading intellectual property law firms. Plaintiff combines unmatched technical and litigation expertise to deliver consistently superior results for clients ranging from cutting-edge start-ups to established Fortune 500 companies in fields ranging from physics to pharmaceuticals and entertainment to engineering. On information and belief, ABM is engaged in the business of developing and distributing novel aesthetic devices, products, and services in the global market.

B.    2014 Engagement Agreement

5.    Plaintiff and ABM entered into an Engagement Agreement dated November 3, 2014 ("2014 Engagement Agreement"), a true and correct copy of which is attached hereto as Exhibit 1. The 2014 Engagement Agreement (and the 2018 Engagement Agreement, discussed below) refers to Plaintiff as the "Firm" and using the pronouns "we," "us," and "our," and refers to ABM using the pronouns "you" and "your."

6.    The 2014 Engagement Agreement "covers all matters delegated to us now or in the future, whether or not supplemented by subsequent matter retention agreements signed by the parties." However, the actual scope of work for the 2014 Engagement Agreement was general intellectual-property law representation including preparation, filing and prosecution of patent applications, as set forth in Attachment 1 to the 2014 Engagement Agreement.

7.    Under the heading "Legal Fees and Costs," the 2014 Engagement Agreement states:

> Our charges are comprised of professional fees and costs that we pay or incur on your behalf. Professional fees are charged by attorneys, including partners and associates, and by non-attorney professionals, including patent agents, patent scientists and paralegals. Costs are either amounts invoiced to us from outside vendors or professionals or reasonable allocations of our internal costs attributable to the use of our facilities and personnel.
> …
> Our professional fees are based on the amount of time we spend attending to

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

your legal matters. Although some matters are billed at a fixed fee, most fees are calculated at the regular hourly billing rate of the person performing the work. The hourly rate of each person is determined by his/her experience. Our fixed fees and hourly rates are subject to change without notice, but are usually adjusted once per year.

8.    Under the heading "Retainers and Invoices," the 2014 Engagement Agreement states:

Our regular invoices are mailed monthly[.] All regular invoices are due and payable within thirty (30) days … after their receipt, except that you may withhold payment of any questioned amounts until the propriety of the charge can be reasonably determined. If you do not object to a regular invoice within thirty (30) days … we will assume that you have agreed to the terms of the invoice.

You will pay any charges not in question when they are due, regardless of whether an insurance company, or other third party, has agreed to reimburse you for our fees[.] On any amounts not paid within thirty (30) days after the date of receipt of the invoice, a late charge of ten percent (10%) simple interest per annum will be assessed.

9.    The 2014 Engagement Agreement (and the 2018 Engagement Agreement, discussed below), under the sub-heading "Resolution of Disputes; Waiver of Jury Trial," states:

You recognize that our legal services relate to patents, trademarks, copyrights or other areas of intellectual property, and that these are matters in which the scope of protection is typically subject to U.S. federal law, and in which U.S. District Courts typically have jurisdiction. In recognition of those facts, if a dispute should ever arise over our services (including any related dispute over our fees), such dispute will be tried before a U.S. District Court judge, *sitting without a jury*, including any related dispute over our fees. Should a dispute ever arise (i) over our services in which a U.S. District Court declines jurisdiction, or (ii) solely over our fees, such dispute will be tried before a California Superior Court judge, *sitting without a jury*. You also have the right to preliminarily arbitrate any dispute over our fees before the relevant local bar association in an effort to reach an amicable resolution. We encourage you to seek the advice of an attorney not associated with the Firm with respect to this provision and other provisions of this Agreement. (Emphasis in original.)

10.    The 2014 Engagement Agreement (and the 2018 Engagement Agreement, discussed below), under the sub-heading "Notices; Successors; Entire Agreement; Amendment; Governing Law," states in relevant part: "This Agreement is governed by, and must be interpreted under, California law, except that United States federal law will govern … Section I.E above entitled "Resolution of Disputes; Waiver of Jury Trial[.]"

C.    2018 Engagement Agreement

11.    Plaintiff and ABM entered into a Litigation Engagement Agreement dated September 28, 2018 ("2018 Engagement Agreement," and with the 2014 Engagement Agreement, "Engagement Agreements"), a true and correct copy of which is attached hereto as Exhibit 2. The 2018 Engagement Agreement governs Plaintiff's representation of ABM in litigation hereinafter referred to as the "Taghizadeh Litigation" against "Farhan Taghizadeh, Felicia Taghizadeh, and potentially Arizona Facial Plastics, Amnio Aesthetics, and/or Aesthetics Management Partners for breach of contract, trade secret misappropriation, and other claims."

12.    Under the heading "Legal Fees and Costs," the 2018 Engagement Agreement states:

> Our charges are comprised of professional fees and costs that we pay or incur on your behalf. Professional fees are charged by attorneys, including paralegals and litigation clerks. Costs are either amounts invoiced to us from outside vendors or professionals or reasonable allocations of our internal costs attributable to the use of our facilities and personnel.
> …
> Our professional fees are based on the amount of time we spend attending to your legal matters. Our fees in connection with litigation are calculated at the regular hourly billing rate of the person performing the work. The hourly rate of each person is determined by his/her experience. Our hourly rates are subject to change without notice, but are usually adjusted once per year[.] Subject to your instructions, the responsible partner will determine the overall strategy for the Litigation, and then closely supervise another professional (such as an associate or non-attorney professional) in the implementation of that strategy. More than one attorney will be assigned to your case so that those tasks requiring a higher level of expertise will be performed by a more experienced attorney, and those tasks requiring less expertise will be performed by an attorney at a lower billing rate in order to provide you with a cost-effective, yet high quality, work product.

13.    Under the same heading, the 2018 Engagement Agreement identifies three attorneys who "will most likely be responsible for the majority of the projects relating to this case" but further states that "[a]s needed … other attorneys and non-attorney professionals in the Firm may be involved in the Litigation."

14.    Under the heading "Retainers and Invoices," the 2018 Engagement Agreement states:

> Our regular invoices are mailed monthly[.] All regular invoices are due and payable within thirty (30) days … after their receipt, except that you may

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

withhold payment of any questioned amounts until the propriety of the charge can be reasonably determined. If you do not object to a regular invoice within thirty (30) days … we will assume that you have agreed to the terms of the invoice.

You will pay any charges not in question when they are due, regardless of whether an insurance company, or other third party, has agreed to reimburse you for our fees[.] On any amounts not paid within thirty (30) days after the date of receipt of the invoice, a late charge of ten percent (10%) simple interest per annum will be assessed.

## FIRST CLAIM FOR RELIEF

(Breach of Contract – Against ABM)

15.    Plaintiff realleges and incorporates by reference paragraphs 1-14 of this Complaint.

16.    The 2014 Engagement Agreement is a valid and binding contract between Plaintiff and ABM.

17.    Plaintiff has performed all terms and conditions of the 2014 Engagement Agreement Plaintiff was required to perform, unless excused or prevented from such performance by ABM's conduct.

18.    ABM has breached its contractual obligations to Plaintiff under the 2014 Engagement Agreement by failing to pay Plaintiff amounts due thereunder.

19.    As a direct and proximate result of ABM's breach of the 2014 Engagement Agreement, Plaintiff has suffered damages totaling not less than $60,243.01 as of January 19, 2023, including $48,316.28 in attorney fees, $7,165.74 in costs, and $4,760.99 in late charges.

## SECOND CLAIM FOR RELIEF

(Breach of Contract – Against ABM)

20.    Plaintiff realleges and incorporates by reference paragraphs 1-19 of this Complaint.

21.    The 2018 Engagement Agreement is a valid and binding contract between Plaintiff and ABM.

22.    Plaintiff has performed all terms and conditions of the 2018 Engagement

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

Agreement Plaintiff was required to perform, unless excused or prevented from such performance by ABM's conduct.

23.     As a direct and proximate result of ABM's breach of the 2018 Engagement Agreement, Plaintiff has suffered damages totaling not less than $867,524.06 as of January 19, 2023, including $607,122.01 in attorney fees, $72,227.79 in costs, and $188,174.26 in late charges.

THIRD CLAIM FOR RELIEF

(Unjust Enrichment – Against ABM)

24.     Plaintiff realleges and incorporates by reference paragraphs 1-23 of this Complaint.

25.     If the Engagement Agreements are not valid and binding contracts between Plaintiff and ABM, Plaintiff is entitled to restitution from ABM in lieu of breach-of-contract damages because ABM has received and unjustly retained benefits from Plaintiff without paying Plaintiff for such benefits.

26.     The benefits Plaintiff conferred on ABM consist of the reasonable value of the legal services Plaintiff performed for ABM and the costs Plaintiff reasonably incurred for ABM pursuant to ABM's express or implied direction and request. Plaintiff performed these services and incurred these costs with the reasonable understanding and expectation that ABM would pay Plaintiff for such services and reimburse Plaintiff for such costs.

FOURTH CLAIM FOR RELIEF

(Account Stated – Against ABM)

27.     Plaintiff realleges and incorporates by reference paragraphs 1-26 of this Complaint.

28.     Within the last four years, an account was stated in writing between Plaintiff and ABM, wherein it was agreed that ABM was indebted to Plaintiff in the principal sum of $734,831.82.

29.     ABM has never effectively disputed its liability for the account stated.

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

30.     No part of said sum has been paid, although demand therefor has been made, and there is now due, owing, and unpaid from ABM to Plaintiff the principal sum of $734,831.82 as of January 19, 2023, together with interest at the rate of 10 percent per annum beginning as of January 19, 2023.

## DEMAND FOR RELIEF

Plaintiff prays for judgment against Defendants, and each of them as follows:

### AS TO THE FIRST CLAIM FOR RELIEF

For the principal sum of $55,482.02 (consisting of $48,316.28 in attorney fees and $7,165.74 in costs) plus $4,760.99 in late charges as of January 19, 2023, and late charges thereafter at the rate of 10 percent per annum on any past-due sums.

### AS TO THE SECOND CLAIM FOR RELIEF

For the principal sum of $679,349.80 (consisting of $607,122.01 in attorney fees and $72,227.79 in costs) plus $188,174.26 in late charges as of January 19, 2023, and late charges thereafter at the rate of 10 percent per annum on any past-due sums.

### AS TO THE THIRD AND FOURTH CLAIM FOR RELIEF

For damages in the amount of $734,831.82 as of January 19, 2023 (consisting of $55,482.02 for Plaintiff's legal services rendered and costs incurred other than in connection with the Taghizadeh Litigation and $679,349.80 for Plaintiff's legal services rendered and costs incurred in connection with the Taghizadeh Litigation), plus interest on such sums at the rate of 10 percent per annum beginning as of January 19, 2023.

### AS TO ALL CLAIMS FOR RELIEF

1.     For costs of suit incurred herein.

2.     For such other and further relief as the Court may deem just and proper and as the circumstances may require.

Dated:  January 27, 2023

HEMAR, ROUSSO & HEALD, LLP

By: /s/ Christopher D. Crowell
Christopher D. Crowell
Attorneys for Plaintiff
KNOBBE MARTENS OLSON & BEAR
LLP, a California limited liability
partnership

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

# EXHIBIT 1

Client Code: ABIO.000GEN

<u>ENGAGEMENT AGREEMENT</u>

      **THIS ENGAGEMENT AGREEMENT** (this "Agreement"), dated November 3, 2014, is by and between **KNOBBE, MARTENS, OLSON & BEAR, LLP,** a California limited liability partnership ("we," "us" or the "Firm"), and the client(s) identified below ("you"):

Client(s): <u>AESTHETICS BIOMEDICAL, INC.</u>

Type of entity and state of incorporation or formation: <u>Delaware Corporation</u>

      We are pleased that you have requested that we represent you with respect to certain intellectual property matters. For your information, the Firm is a limited liability partnership formed pursuant to the California Corporations and Business & Professions Codes. This Agreement sets forth the terms of our engagement, including financial terms and how we will address conflicts of interest. Specifically, you and we agree as follows:

I.     <u>THE SCOPE OF OUR ENGAGEMENT</u>

    A.    *<u>Matters Delegated to Us</u>*

      This Agreement covers all matters delegated to us now or in the future, whether or not supplemented by subsequent matter retention agreements signed by the parties. The initial matter is described in Attachment 1 to this Agreement. We will be responsible solely for those matters that you expressly delegate to us. The person who initially contacts us on your behalf with respect to a matter has the authority to delegate the matter to us, and we will direct communications solely to that person, unless you tell us otherwise in writing.

    B.    *<u>Our Legal Advice</u>*

      While we will endeavor to provide you with sound legal advice, it is very difficult to predict the outcome of legal matters. Therefore, nothing in this Agreement or in our communications with you will constitute a promise or guarantee as to the outcome of your intellectual property matters, but only expressions of our professional judgment.

      For example, if we file a patent or trademark application for you, there is no guarantee that a patent will issue or that a registration will result, or that if a patent issues, the patent claims will be construed in a particular manner. The preparation and prosecution of a patent application involves hundreds of decisions based on a multitude of judgments made by us in connection with drafting the specification and claims or in the prosecution of the application. These judgments may affect the scope and value of the patent. While we will do our best to make good sound judgments based on our experience and knowledge at the time, we may not anticipate everything that may arise in the future and we cannot take into account information of which we are unaware. As a result, we may draft the claims or the disclosure or conduct the prosecution of an application in such a manner that ultimately may affect the scope or value of the patent or may make the patent difficult to enforce. When you ask us to prepare and/or prosecute a patent application, we cannot and do not guarantee to deliver a perfect patent, but only that we will use our best judgment at the time to prepare and prosecute the patent application. Similarly, if we advise you with regard to the validity, scope or infringement of intellectual property rights, our advice is not a prediction; it is only our judgment as to likely consequences.

      If we undertake a search to determine the validity, scope or infringement of intellectual property rights, we will meet or exceed the ordinary standard of care exercised by intellectual property lawyers in the U.S. We will use our judgment to determine the databases that should be searched and facts that should be acquired or examined as limited by the budget you have given us. As long as we have met this standard of care in these circumstances, we have fulfilled our obligations to you.

      The Patent Office Rules permit extensions of time for responding to correspondence from the Patent Office during prosecution of an application. Many firms, including ours, use these extensions to schedule work in an orderly fashion. Sometimes such extensions will shorten the term of the patent. Unless you notify us otherwise in writing, you permit us to use these extensions in prosecuting your applications.

**C.**    _Insurance Coverage for Our Legal Fees and Costs_

You promptly and carefully will review all insurance coverage that you may have to determine whether a portion of our legal fees may be reimbursable to you by your insurance carrier. Because we are not insurance coverage specialists, you should obtain legal advice from an insurance attorney with respect to insurance coverage, so that a prompt tender of any claims can be made to any potential insurance carrier.

**D.**    _Termination of Relationship_

The attorney-client relationship is one of mutual trust, confidence and respect. Thus, you retain the right to discharge us as your counsel at any time for any reason. Likewise, we retain the right to cease representing you (except to the extent limited by applicable law or rules of professional conduct), at any time for any reason, after giving you reasonable notice of our decision to withdraw. Further, your failure to pay our invoices within sixty (60) days of receipt may result in our withdrawal from this representation. You will sign all paperwork necessary to effect our withdrawal from any matter and in any forum.

Following termination of our engagement, upon your written request, we will return to you your papers and property in our possession, provided that (i) we receive your written request within two months after termination of our engagement and (ii) we will retain our files, including lawyer work product, pertaining to the work performed. In order to minimize unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any such items retained by us within a reasonable period of time after the termination of each matter or the termination of the engagement unless you have made other arrangements with us in writing.

When more than six (6) months have elapsed from the last time that you requested, or we furnished, any billable services for you, and we are not handling any pending application or proceeding before the Patent and Trademark Office or any court, our attorney/client relationship will be considered terminated. You may re-engage us to represent you for periodic patent or trademark maintenance, renewal or enforcement activities, subject to our conflict clearance and business intake procedures. The fact that we may, from time to time, remind you of subsequent actions that you should undertake to maintain or renew your intellectual property rights is a courtesy only and should not be understood as a revival of an attorney/client relationship, or an obligation to continue such reminders in the future. If the relationship between you and the Firm is terminated for any reason, and you desire to engage new counsel to continue work on pending matters, you will not seek to recover from us any "start-up" costs incurred by the new counsel. Upon termination of our engagement, we will have no responsibility for continuing to work on any pending matters.

**E.**    _Resolution of Disputes; Waiver of Jury Trial_

**You recognize that our legal services relate to patents, trademarks, copyrights or other areas of intellectual property, and that these are matters in which the scope of protection is typically subject to U.S. federal law, and in which U.S. District Courts typically have jurisdiction. In recognition of those facts, if a dispute should ever arise over our services (including any related dispute over our fees), such dispute will be tried before a U.S. District Court judge, _sitting without a jury_, including any related disputes over our fees. Should a dispute ever arise (i) over our services in which a U.S. District Court declines jurisdiction, or (ii) solely over our fees, such dispute will be tried before a California Superior Court judge, _sitting without a jury_. You also have the right to preliminarily arbitrate any dispute over our fees before the relevant local bar association in an effort to reach an amicable resolution. We encourage you to seek the advice of an attorney not associated with the Firm with respect to this provision and other provisions of this Agreement.**

**F.**    _Respective Responsibilities of Attorney and Client_

In addition to our other responsibilities set forth in this Agreement, we will keep you reasonably informed of significant developments in the subject matter of our representation and as necessary to perform our services. We will inform you as to our progress and will consult with you as to issues that arise.

In addition to your other responsibilities set forth in this Agreement, you will be candid and cooperative with us and will keep us informed with complete and accurate factual information, documents and other communications relevant to the subject matter of our representation or otherwise reasonably requested by us. You also will assist us

by making business, strategic and technical decisions appropriate to enable completion of the work and performance of the services, and will direct the strategic and business decisions affecting the subject matter of our representation. If we ask for instructions as to whether or not you wish to take a certain course of action (for example, file patent applications in foreign countries), you will provide us with instructions on or before the deadline specified by us. If you provide us with instructions after that date, there is no guarantee that we will be able to complete the filing on a timely basis, you assume all risk and we will have no liability if the filing is not timely made. You will inform us, in writing, of any changes in the name, address, telephone number, contact person, E-mail address, state of incorporation or other relevant changes regarding you or your business. If we cannot reach you at the latest address provided to us, we cannot properly represent you, and under those circumstances you hereby authorize us to withdraw as your attorneys and to permit any pending applications to become abandoned or your patent or trademark registration to expire.

If you affiliate with, acquire, are acquired by or merge with another company, you will provide us with sufficient notice to permit us to seek an engagement that is limited in scope or time or to withdraw as your attorneys (and you consent thereto and consent to pay for all costs associated with transferring your matters to new counsel and all costs of getting such new counsel up to speed on your matters) if we determine that such affiliation, acquisition or merger creates a conflict of interest between any of our clients and the other party to such affiliation, acquisition or merger, or if we decide in our sole discretion that it is not in the best interests of the Firm to continue to represent you in light of your association with the new entity.

### G.    *Ownership of Your Intellectual Property*

You represent and warrant to us that you own all right, title and interest in and to your intellectual property that is or may be the subject of our representation, and that to your knowledge, no third party has asserted or is likely to assert a claim with respect to your intellectual property (except that if your intellectual property is co-owned with others, you have disclosed to us the identities of all co-owners). You agree to indemnify and defend us with regard to any claim against us by any party asserting rights to your intellectual property.

### H.    *Responses to Auditors' Requests for Information*

It is our policy to comply strictly with the terms of the ABA Statement of Policy Regarding Lawyers' Responses to Auditors' Requests for Information (December 1975) in any response that you request we make to your auditors regarding "loss contingencies" affecting you.

## II.    CONFLICTS OF INTEREST

### A.    *Conflicts Policy*

**Our policy on conflicts may affect your rights. We encourage you to seek the counsel of an attorney not associated with the Firm with respect to this policy.**

Our Firm represents many other companies and individuals. We take numerous steps to search for conflicts between the work we do for you and our work for other clients. However, these searches are not perfect, and may result in our unknowing acceptance of work that conflicts with yours. As long as our searches meet the standard of care in our jurisdiction, you will not hold us liable for a conflict of which none of our partners is actually aware.

If we discover a conflict after work has begun, you will use reasonable efforts to help us resolve the conflict to the mutual satisfaction of both clients. Reasonable efforts include allowing us to create an ethical or virtual wall between groups of attorneys in our Firm to protect confidential information of both clients, whenever we determine that such an ethical or virtual wall will safeguard the confidential information of each client. We might obtain confidential information from another client that may be of interest to you but that we cannot share with you.

It is possible that during the time we are representing you, some of our current or future clients will have disputes or transactions with you regarding a specific matter, or may take positions adverse to your interests, and they may ask us to represent them on those matters. **You hereby give your informed written consent to our continued representation of current clients, or undertaking in the future to represent new clients, even if**

such representation is directly adverse to you, so long as the disputed or adverse matter is not *substantially related* to our work for you and is not litigation directly against you. **You waive any conflict of interest that might arise from any such engagements, and will not seek to disqualify us in or assert a conflict with respect to any of those engagements.** Although this Agreement is confidential, we may share the terms of any conflict waivers (after deleting any otherwise confidential information), and the fact that we represent you and the general field in which we represent you, with our affected clients. In engagement agreements with other clients, we seek similar consents and waivers of those clients in order to maximize the potential of our being able to represent you in future matters. We will not knowingly undertake litigation that is directly against you while currently representing you. If, for any reason, this consent and waiver of potential conflicts is not effective in the circumstances, you consent to our resignation from our representation of you if resignation at that time is otherwise permissible under applicable law and rules of professional conduct. In that case, you would need to engage at your expense separate counsel to represent your interests.

*Substantially related*, as used in this Agreement, has specific meanings. As to patents, *substantially related* work is work that is within the scope of the patent claims of patents owned by you that we prepared or substantively reviewed for you. As to as yet unpatented inventions, *substantially related* work is work that is *within the scope of* that which is patentable in your inventions. As to trademarks, *substantially related* work is work involving any trademark or trademark registration that, as used, is confusingly similar to your marks when applied to your goods or services. As to copyrights, *substantially related* work is work involving an article or work that is a copy of your article or work. As to trade secrets, *substantially related* work is work involving the same information or material as to which you claim trade secret protection. In any context, any alleged transmission by us of your confidential information to another client will not be implied or inferred, but must be proven.

If, in the course of prosecuting a patent application for another client, we receive an office action in which one of your patents or patent applications is cited as prior art as a basis for rejecting a claim, it would not be a conflict of interest for us to argue to the examiner that the specification in your patents or patent applications does not anticipate or make obvious the other client's claim.

**B.    _Whom We Represent_**

In connection with your matters, we will be representing only you and not your stockholders, subsidiaries, related companies, parent companies, investors, officers, directors or employees ("Affiliates"). You will not give us confidential information regarding your Affiliates. We may represent another client in matters (including litigation) adverse to any Affiliate, so long as we do not use your confidential information, and you hereby waive any conflicts arising from such representation. Moreover, if you share with any third party, including your Affiliates, advice that we provide to you, and any third party relies on that advice to their detriment, you will indemnify and defend us with regard to any claim against us for any loss they incur.

Unless we agree otherwise in writing, you may not use our advice for the purpose of acquiring financing for or selling any shares or interest in your business or your intellectual property. If our advice is so used, you will indemnify and defend us with regard to any claim against us brought by any party who relies on our advice.

**III.    OUR FINANCIAL ARRANGEMENT WITH YOU**

**A.    _Legal Fees and Costs_**

Our charges are comprised of professional fees and costs that we pay or incur on your behalf. Professional fees are charged by attorneys, including partners and associates, and by non-attorney professionals, including patent agents, patent scientists and paralegals. Costs are either amounts invoiced to us from outside vendors or professionals or reasonable allocations of our internal costs attributable to the use of our facilities and personnel. Costs may include filing fees, draftsperson fees, consultant fees, investigation fees, prior art searches, courier fees, outgoing faxes, photocopies, postage, messenger services, computer research time, foreign associate attorneys, reasonable and customary travel expenses, etc. Whenever we request in writing, you will be responsible for the payment of certain significant fees and expenses charged by outside vendors in connection with the representation, and you will make payment directly to such vendors upon receipt of an invoice.

Our professional fees are based on the amount of time we spend attending to your legal matters.  Although some matters are billed at a fixed fee, most fees are calculated at the regular hourly billing rate of the person performing the work.  The hourly rate of each person is determined by his/her experience.  Our fixed fees and hourly rates are subject to change without notice, but are usually adjusted once per year.  If we ever produce records or testify under subpoena with regard to your representation, you will compensate us at our normal billing rates for our costs and the time required to prepare for and provide such testimony or records (including the cost of counsel to defend any depositions).  In order to perform work for you in a cost-effective manner, the partner in charge of your matter may delegate your work to another professional (such as an attorney or non-attorney professional) who will work under the supervision of the partner.

California Business and Professions Code Section 6148 requires that, under certain circumstances, attorney invoices contain a specified level of detail as to fees and costs.  To the extent (if any) that Section 6148 applies to this engagement, you knowingly waive any further detail concerning specific fees or charges.  You, of course, may request it at any time, and we will provide to you, additional detail as to particular charges and attorney and staff rates applicable to this engagement.

**B.**   **_Retainers and Invoices_**

It is our standard practice to request an advance payment or "retainer" when initiating work on a specific matter.  The amount and terms of the retainer for the initial matter are set forth in Attachment 1 to this Agreement.  If retainer amounts are held in our trust fund for specific matters, and those matters are completed, you hereby authorize us to apply any excess to your overdue accounts for other matters and we will return any balance to you.

Our regular invoices are mailed monthly.  Occasionally, when there is an unusually large amount of work performed, we may issue a special invoice.  The purpose of the special invoice is to be sure that you are aware of the large amount outstanding so that you may budget accordingly and so that we may ensure the cash flow necessary to pay for the staffing and services required by your matter.  All regular invoices are due and payable within thirty (30) days, and all special invoices are due within ten (10) days, after their receipt, except that you may withhold payment of any questioned amounts until the propriety of the charge can be reasonably determined.  If you do not object to a regular invoice within thirty (30) days, or to a special invoice within ten (10) days, after receipt, we will assume that you have agreed to the terms of the invoice.  You will pay any charges not in question when they are due, regardless of whether an insurance company, or other third party, has agreed to reimburse you for our fees.  Moreover, you may not assign or otherwise transfer your obligation to pay our fees without our express written approval.  On any amounts not paid within thirty (30) days after the date of receipt of the invoice, a late charge of ten percent (10%) simple interest per annum will be assessed.  If your bills remain unpaid beyond sixty (60) days, and still remain unpaid ten (10) days after you receive written notice from us that we intend to stop work or withdraw from representing you due to non-payment of your bills, you hereby authorize us to do either or both of the following, at our option:  (i) immediately stop work on all of your matters, even if to do so would cause prejudice to you or any of your rights, or (ii) withdraw from your representation, if permitted by applicable law and rules of professional conduct.

**C.**   **_Security Interest_**

As security for payment of our professional fees and costs, you hereby grant us a security interest in and lien on (i) your intellectual property that is or has ever been the subject of our representation and all files and records relating thereto, (ii) any recoveries from litigation involving such intellectual property, including, without limitation, any judgments, amounts paid in settlement, insurance proceeds and any awards of attorneys' fees and costs, and (iii) any other proceeds of such intellectual property (collectively, the "Collateral").  This lien attaches on the date that you sign this Agreement.  Further, we may file and/or record any documents that we deem appropriate to evidence and/or perfect such lien at any time that your account is sixty (60) or more days overdue.  Our lien secures the outstanding sums owed to us during and at the conclusion of the performance of our services.  In connection with this lien, you hereby appoint us as your attorneys-in-fact with full authority to execute, file and/or record any documents necessary to evidence or perfect our lien and to assign the Collateral to us in the event of default by you.  You represent to us that you have not granted any security interest in the Collateral to any third party.  **Before signing this Agreement, you should recognize your right to seek independent counsel of your choice with respect to the granting of a security interest described in this paragraph.**

IV.    **GENERAL PROVISIONS**

    A.    ***E-Mail Notifications***

    Unless you inform us otherwise in writing, E-mail is an acceptable means of communicating with you (and we will direct communications to the E-mail address that you have provided). If you wish to encrypt your communications with us for security reasons, please E-mail us with your request, and we will work with you to establish encrypted communications. Absent such a request, you agree that there is a reasonable expectation of secrecy in our E-mail communications to preserve your confidences.

    B.    ***Notices; Successors; Entire Agreement; Amendment; Governing Law***

    All notices must be in writing and must be sent by U.S. registered or certified mail, addressed to the addresses last provided by the receiving party. This Agreement binds and inures to the benefit of your successors and assigns and the successors and assigns of our Firm. This Agreement contains the entire agreement between you and our Firm. All preliminary and contemporaneous communications are superseded by this Agreement. This Agreement may be amended only by a written agreement signed by both you and a partner of our Firm. This Agreement is governed by, and must be interpreted under, California law, except that United States federal law will govern (i) Section I.E above entitled "Resolution of Disputes; Waiver of Jury Trial" and (ii) issues related to whether matters are substantially related in the context of a conflict of interest, and except that the American Bar Association Model Rules of Professional Conduct will govern your informed written consent and waivers provided in Section II.A above.

    C.    ***No Accord and Satisfaction***

    No statement on a payment check from you or in a letter accompanying a payment check from you is binding on the Firm, and we may negotiate such check without being bound by the conditions of any such statement. If you pay any amount other than the actual amount due to us, receipt or collection of such partial payment does not constitute an accord and satisfaction. We may retain any such partial payment, whether restrictively endorsed or otherwise, without prejudice to our right to collect the balance properly due.

    D.    ***Authority; Force Majeure***

    If you are an entity, anyone signing this Agreement on your behalf represents and warrants that they are duly authorized to sign on behalf of and to bind your entity. If we are delayed or prevented from performing any obligation to you by an event of Force Majeure, our performance of such obligation will be excused for a period equal to (i) the duration of the Force Majeure event, or (ii) if longer, the period of delay actually caused by the Force Majeure event. For purposes of this Agreement, "Force Majeure" means a strike, work stoppage, act of war or terrorism, Act of God, fire, earthquake or other natural disaster, or other occurrence beyond our reasonable control. We will endeavor to provide you with written notice within ten (10) days after the occurrence of any event of Force Majeure.

    E.    ***Severability***

    If any provision, requirement or obligation contained in this Agreement is deemed unlawful or unenforceable by any court, the remainder of the Agreement shall remain in full force and effect, as though the unlawful or unenforceable portion were removed.

    If you agree to the terms of this Agreement, please sign below and return the duplicate originals to the Firm in care of the partner signing below.  We will countersign it and send you an original for your records.  Before signing this Agreement, you should recognize your right to seek independent counsel of your choice with respect to the terms of this Agreement, including the granting of a security interest described above.  This Agreement will be effective retroactively to the date we first performed services for you.  The date of this Agreement set forth above is for reference only.  We look forward to being of service to you.

KNOBBE, MARTENS, OLSON & BEAR, LLP


By: _____
Partner's Signature
Name of Partner:  Jason Jardine


AESTHETICS BIOMEDICAL, INC.


By: _____
Print Name:  Ron King, PhD, MBA
Title:  Member

Attachment 1

Terms Pertaining to Initial Matter

I.    **Scope of Work for Initial Matter:**

General IP representation including preparation, filing and prosecution of patent applications.

II.   **Firm Personnel Assigned to Initial Matter:**

The following individuals will most likely be working on the initial matter:

| Partner | Jason Jardine | $485 | /hour |
|---|---|---|---|
| Associate | | $* | /hour |
| Non-Attorney Professional | | $* | /hour |

As needed, however, other attorneys and non-attorney professionals in the firm may be involved with this matter and may confer among themselves about this matter in order to permit your work to be efficiently handled at the lowest possible billing rate.  Of course, you are free at any time to request that a specific individual handle this or all of your legal matters.

III.  **Estimate**

Upon your request, we will estimate in advance the costs and fees that we expect to incur in completing our services.  Moreover, we will endeavor during the course of our work to advise you promptly if we find that the issues are more complex or difficult than anticipated, and that the estimates must be raised.  You understand that in all cases, these are only our best estimates, and that the fees and costs may exceed these estimates.  Based on the information we have at this time, we estimate that the fees and costs for the initial matter will be:

| Initial Consultation Fee | $ | Waived |
|---|---|---|
| | est. $ | |

IV.   **Retainer Amount**

The retainer specified below must be paid before we initiate our services on the initial matter.

| Retainer for Initial Matter: | $ | Waived |
|---|---|---|

The above retainer amount will be placed in a trust account and applied to your account as our fees and costs are invoiced.

19224061:103014/JADE

# EXHIBIT 2

<u>LITIGATION ENGAGEMENT AGREEMENT</u>

**THIS LITIGATION ENGAGEMENT AGREEMENT** (this "Agreement"), dated *Sept 28, 2018*, is by and between **KNOBBE, MARTENS, OLSON & BEAR, LLP,** a California limited liability partnership ("we," "us" or the "Firm"), and the client(s) identified below ("you"):

Client(s):    AESTHETICS BIOMEDICAL, INC.

Type of entity and state of incorporation or formation:    Delaware Corporation

Case(s)/Matter(s)    Litigation against Farhan Taghizadeh, Felicia Taghizadeh, and potentially Arizona Facial Plastics, Amnio

Aesthetics, and/or Aesthetics Management Partners for breach of contract, trade secret misappropriation, and other claims.

Case Nos. _____    Our File Nos.    ABIOL.010L

We are pleased that you have requested that we represent you with respect to the above-referenced litigation matter(s) (the "Litigation"). For your information, the Firm is a limited liability partnership formed pursuant to the California Corporations and Business & Professions Codes. This Agreement sets forth the terms of our engagement, including financial terms and how we will address conflicts of interest. Specifically, you and we agree as follows:

I.    <u>THE SCOPE OF OUR ENGAGEMENT</u>

A.    <u>*Representation Limited to the Litigation*</u>

We will be representing you only with respect to the Litigation and in no other matters unless specifically agreed to in a written agreement signed by you and us. The person who initially contacted us on your behalf with respect to the Litigation or <u>MaryAnn Guerra and Todd Rethemier</u> has the authority to delegate the Litigation to us, and we will direct communications solely to that person, unless you tell us otherwise in writing.

B.    <u>*Our Legal Advice*</u>

While we will endeavor to provide you with sound legal advice, it is very difficult to predict the outcome of legal matters, particularly litigation matters. Therefore, nothing in this Agreement or in our communications with you will constitute a promise or guarantee as to the outcome of the Litigation, but only expressions of our professional judgment.

You understand that we cannot and do not guarantee an ultimate victory or favorable settlement, but only that we will use our best judgment at the time and that we will vigorously represent you. Similarly, if, in connection with or in preparation for the Litigation, we advise you with regard to the validity, scope or infringement of intellectual property rights, our advice is not a prediction; it is only our judgment as to likely consequences.

C.    <u>*Insurance Coverage for Our Legal Fees and Costs*</u>

**You promptly and carefully will review all insurance coverage that you may have to determine whether a portion of our legal fees may be reimbursable to you by your insurance carrier. If your insurance coverage does apply, you would remain responsible for timely payment of all invoices in accordance with the terms provided herein, but we will accept payments directly from your insurance carrier and you consent thereto. You would be responsible for payment of any difference between insurance payments and our invoices. Because we are not insurance coverage specialists, you should obtain legal advice from an insurance attorney with respect to insurance coverage, so that a prompt tender of any claims can be made to any potential insurance carrier.**

D.    <u>*Termination of Relationship*</u>

The attorney-client relationship is one of mutual trust, confidence and respect. Thus, you retain the right to discharge us as your counsel at any time for any reason. Likewise, we retain the right to cease representing you (except to the extent limited by applicable law or rules of professional conduct), at any time for any reason, after giving you reasonable notice of our decision to withdraw. Further, your failure to pay our invoices within sixty (60) days of receipt may result in our withdrawal from

this representation. You will sign all paperwork necessary to effect our withdrawal from the Litigation, which may be required by the court/forum in which the Litigation is pending.

Following termination of our engagement or conclusion of the Litigation, upon your written request, we will return to you your papers and property in our possession, provided that (i) we receive your written request within two months after termination of our engagement and (ii) we retain our files, including lawyer work product, pertaining to the work performed. In order to minimize unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any such items retained by us within a reasonable period of time after the termination of the Litigation or our engagement unless you have made other arrangements with us in writing.

When more than six (6) months have elapsed from the last time that you requested, or we furnished, any billable services for you, and the Litigation is not pending in any court or other forum, our attorney/client relationship will be considered terminated. You may re-engage us to represent you for any other subsequent litigation or other intellectual property matters, subject to our conflict clearance and business intake procedures. If the relationship between you and the Firm is terminated for any reason, and you desire to continue to pursue the Litigation, you promptly will engage new counsel to continue work on the Litigation, and you will not seek to recover from us any "start-up" costs incurred by the new counsel.

E.    *Resolution of Disputes; Waiver of Jury Trial*

You recognize that our legal services relate to litigation involving patents, trademarks, copyrights or other areas of intellectual property, and that these are matters in which the scope of protection is typically subject to U.S. federal law, and in which U.S. District Courts typically have jurisdiction. In recognition of those facts, if a dispute should ever arise over our services (including any related dispute over our fees), such dispute will be tried before a U.S. District Court judge, *sitting without a jury*, including any related disputes over our fees. Should a dispute ever arise (i) over our services in which a U.S. District Court declines jurisdiction, or (ii) solely over our fees, such dispute will be tried before a California Superior Court judge, *sitting without a jury*. You also have the right to preliminarily arbitrate any dispute over our fees before the relevant local bar association in an effort to reach an amicable resolution. We encourage you to seek the advice of an attorney not associated with the Firm with respect to this provision and other provisions of this Agreement.

F.    *Respective Responsibilities of Attorney and Client*

In addition to our other responsibilities set forth in this Agreement, we will keep you reasonably informed of significant developments in the Litigation and as necessary to perform our services. We will inform you as to our progress and will consult with you as to issues that arise.

In addition to your other responsibilities set forth in this Agreement, you will be candid and cooperative with us and will keep us informed with complete and accurate factual information, documents and other communications relevant to the Litigation or otherwise reasonably requested by us. You also will assist us by making strategic and tactical decisions appropriate to enable us to represent you competently with respect to the Litigation. If we advise you to take courses of action that we deem necessary in connection with the Litigation, and you decline to take those courses of action or do not provide us with timely instructions as to them, you will assume the risk of not taking such courses of action or, in the alternative, you authorize us to withdraw as your attorneys. You will inform us, in writing, of any changes in the name, address, telephone number, contact person, E-mail address, state of incorporation or other relevant changes regarding you or your business. If we cannot reach you at the latest address provided to us, we cannot properly represent you, and under those circumstances you hereby authorize us to withdraw as your attorneys.

If you affiliate with, acquire, are acquired by or merge with another company, you will provide us with sufficient notice to permit us to seek an engagement that is limited in scope or time or to withdraw as your attorneys (and you consent thereto and consent to pay for all costs associated with transferring your matters to new counsel and all costs of getting such new counsel up to speed on your matters) if we determine that such affiliation, acquisition or merger creates a conflict of interest between any of our clients and the other party to such affiliation, acquisition or merger, or if we decide in our sole discretion that it is not in the best interests of the Firm to continue to represent you in light of your association with the new entity.

G.    *Responses to Auditors' Requests for Information*

It is our policy to comply strictly with the terms of the ABA Statement of Policy Regarding Lawyers' Responses to Auditors' Requests for Information (December 1975) in any response that you request we make to your auditors regarding "loss contingencies" affecting you.

II.    **CONFLICTS OF INTEREST**

A.    **Conflicts Policy**

**Our policy on conflicts may affect your rights.  We encourage you to seek the counsel of an attorney not associated with the Firm with respect to this policy.**

Our Firm represents many other companies and individuals.  We take numerous steps to search for conflicts between the work we do for you and our work for other clients.  However, these searches are not perfect, and may result in our unknowing acceptance of work that conflicts with yours.  As long as our searches meet the standard of care in our jurisdiction, you will not hold us liable for a conflict of which none of our partners is actually aware.

If we discover a conflict after work has begun, you will use reasonable efforts to help us resolve the conflict to the mutual satisfaction of both clients.  Reasonable efforts include allowing us to create an ethical or virtual wall between groups of attorneys in our Firm to protect confidential information of both clients, whenever we determine that such an ethical or virtual wall will safeguard the confidential information of each client.  We might obtain confidential information from another client that may be of interest to you but that we cannot share with you.

It is possible that during the time we are representing you, some of our current or future clients will have disputes or transactions with you regarding a specific matter, or may take positions that are adverse to your interests, and they may ask us to represent them on those matters.  **You hereby give your informed written consent to our continued representation of current clients, or undertaking in the future to represent new clients, even if such representation is directly adverse to you, so long as the disputed or adverse matter is not *substantially related* to our work for you and is not litigation directly against you.  You waive any conflict of interest that might arise from any such engagements, and will not seek to disqualify us in or assert a conflict with respect to any of those engagements.**  Although this Agreement is confidential, we may share the terms of any conflict waivers (after deleting any otherwise confidential information), and the fact that we represent you and the general field in which we represent you, with our affected clients.  In engagement agreements with other clients, we seek similar consents and waivers of those clients in order to maximize the potential of our being able to represent you in future matters.  We will not knowingly undertake litigation that is directly against you while currently representing you.  If, for any reason, this consent and waiver of potential conflicts is not effective in the circumstances, you consent to our resignation from our representation of you if resignation at that time is otherwise permissible under applicable law and rules of professional conduct.  In that case, you would need to engage at your expense separate counsel to represent your interests.

*Substantially related,* as used in this Agreement, has specific meanings.  As to patents, *substantially related* work is work that is within the scope of the patent claims of patents at issue.  As to trademarks, *substantially related* work is work involving any trademark or trademark registration that, as used, is confusingly similar to your marks when applied to your goods or services.  As to copyrights, *substantially related* work is work involving an article or work that is a copy of your article or work.  As to trade secrets, *substantially related* work is work involving the same information or material as to which you claim trade secret protection.  In any context, any alleged transmission by us of your confidential information to another client will not be implied or inferred, but must be proven.

B.    **Whom We Represent**

In connection with the Litigation, we will be representing only you and not your stockholders, subsidiaries, related companies, parent companies, investors, officers, directors or employees ("Affiliates").  You will not give us confidential information regarding your Affiliates.  We may represent another client in matters (including litigation) adverse to any Affiliate, so long as we do not use your confidential information, and you hereby waive any conflicts arising from such representation.  Moreover, if you share with any third party, including your Affiliates, advice that we provide to you, and any third party relies on that advice to their detriment, you will indemnify and defend us with regard to any claim against us for any loss they incur.

Unless we agree otherwise in writing, you may not use our advice to you for the purpose of acquiring financing for or selling any shares or interest in your business or your intellectual property.  If our advice is so used, you will indemnify and defend us with regard to any claim against us brought by any party who relies on our advice.

C.    *Potential Disqualification Motion By Farhan Taghizadeh*

You asked that this Agreement memorialize our prior email agreement of August 3, 2018, regarding Farhan Taghizadeh's potential motion to disqualify us. As you know, Dr. Taghizadeh alleged that the Firm has a conflict of interest in representing you against him. It is our position that the Firm has no conflict because the Firm only represented Dr. Taghizadeh prior to Aesthetics Biomedical being formed on subject matter unrelated to this dispute. After Aesthetics Biomedical was formed, the Firm represented Aesthetics Biomedical and not Dr. Taghizadeh individually. Thus, the Firm does not believe it has a conflict of interest.

However, courts often err on the side of disqualifying lawyers even if there is no conflict. We believe there is a significant risk that a court would do so in this case, even though we believe that decision would be incorrect. As discussed, disqualification motions can be expensive, create unnecessary delay and distraction, and could even impact a separate firm's ability to represent ABM in this case.

You previously suggested that Knobbe could file the complaint and withdraw if Dr. Taghizadeh moves for disqualification. While we believe the safest and least expensive course of action for ABM would be to retain new counsel to file the lawsuit, we agreed to prepare and file the complaint with your agreement and understanding that if Dr. Taghizadeh moves for disqualification, we will not oppose the motion and instead will withdraw (and ABM would sign any papers necessary to effectuate such withdrawal). After withdrawing from the case, our participation in the Litigation will end and we will refund any remaining retainer (after payment of your outstanding balance).

III.    OUR FINANCIAL ARRANGEMENT WITH YOU

A.    *Legal Fees and Costs*

Our charges are comprised of professional fees and costs that we pay or incur on your behalf. Professional fees are charged by attorneys, including partners and associates, and by non-attorney professionals, including paralegals and litigation clerks. Costs are either amounts invoiced to us from outside vendors or professionals or reasonable allocations of our internal costs attributable to the use of our facilities and personnel. Costs may include filing fees, court fees, investigation fees, court reporter/video fees and deposition transcripts, outgoing faxes, photocopies, postage, messenger or courier fees, computer research time, prior art searches, reasonable and customary travel expenses, etc. It is our practice to request that experts and consultants hired on your behalf bill you directly. Whenever we request in writing, you will be responsible for the payment of certain other significant fees and expenses charged by outside vendors in connection with the Litigation, and you will make payment directly to such vendors upon receipt of an invoice.

Our professional fees are based on the amount of time we spend attending to your legal matters. Our fees in connection with litigation are calculated at the regular hourly billing rate of the person performing the work. The hourly rate of each person is determined by his/her experience. Our hourly rates are subject to change without notice, but are usually adjusted once per year. If we ever produce documents or testify under subpoena with regard to your representation, you will compensate us at our normal billing rates for our costs and the time required to prepare for and provide such testimony or records (including the cost of counsel to defend any depositions). Subject to your instructions, the responsible partner will determine the overall strategy for the Litigation, and then closely supervise another professional (such as an associate or non-attorney professional) in the implementation of that strategy. More than one attorney will be assigned to your case so that those tasks requiring a higher level of expertise will be performed by a more experienced attorney, and those tasks requiring less expertise will be performed by an attorney at a lower billing rate in order to provide you with a cost-effective, yet high quality, work product. The following individuals will most likely be responsible for the majority of the projects relating to this case:

| | | | |
|---|---|---|---|
| Partners | Michael K. Friedland | $785 | /hour |
| | Adam B. Powell | $525 | /hour |
| Associate | Ashley Morales | $420 | /hour |
| Non-Attorney Professionals | Paralegal | $310 | /hour |

As needed, however, other attorneys and non-attorney professionals in the Firm may be involved in the Litigation. Our personnel may confer among themselves about the Litigation in order to permit the Litigation to be efficiently handled at the

lowest possible billing rates. Because of unpredictable circumstances and complications, it is difficult to estimate the cost of litigation. However, whenever requested, we will do our best to provide you with an estimate of our fees and costs. Please note that the amount of our fees can vary from month to month depending on the stage of the case and the level at which you or any other party elects to litigate the case, and that fees increase substantially in the months prior to trial. At the conclusion of the case, we may be required to close our files in the manner imposed by the court's protective order. We will invoice you for our fees and costs in doing so.

California Business and Professions Code Section 6148 requires that, under certain circumstances, attorney invoices contain a specified level of detail as to fees and costs. To the extent (if any) that Section 6148 applies to this engagement, you knowingly waive any further detail concerning specific fees or charges. You, of course, may request it at any time, and we will provide to you, additional detail as to particular charges and attorney and staff rates applicable to this engagement.

### B.    Retainers and Invoices

It is our standard practice to request an advance payment or "retainer" when initiating representation of a client in a litigation matter. The retainer will be placed in an interest-bearing trust fund account and retained as a security deposit against final payment. We will require an initial $20,000 end-of-matter retainer. After the Defendants file an answer, we will require an additional $10,000 end-of-matter retainer. After either party serves the first found of discovery, we will require an additional $10,000 end-of-matter retainer. As the case approaches trial, an increase in the retainer amount will be required in an amount to be determined. If there is a balance in the retainer amount at the conclusion of the Litigation, we will return the balance to you, with interest, except that if you have any past-due accounts for other matters, you hereby authorize us to apply any balance to those past-due accounts.

Our regular invoices are mailed monthly. Occasionally, when there is an unusually large amount of work performed, we may issue a special invoice. The purpose of the special invoice is to be sure that you are aware of the large amount outstanding so that you may budget accordingly and so that we may ensure the cash flow necessary to pay for the staffing and services required by your matter. All regular invoices are due and payable within thirty (30) days, and all special invoices are due within ten (10) days, after their receipt, except that you may withhold payment of any questioned amounts until the propriety of the charge can be reasonably determined. If you do not object to a regular invoice within thirty (30) days, or to a special invoice within ten (10) days, after receipt, we will assume that you have agreed to the terms of the invoice.

You will pay any charges not in question when they are due, regardless of whether an insurance carrier, or other third party, has agreed to reimburse you for our fees. Moreover, you may not assign or otherwise transfer your obligation to pay our fees without our express written approval. On any amounts not paid within thirty (30) days after the date of receipt of the invoice, a late charge of ten percent (10%) simple interest per annum will be assessed. If your bills remain unpaid beyond sixty (60) days, and still remain unpaid ten (10) days after you receive written notice from us that we intend to stop work or withdraw from representing you due to non-payment of your bills, you hereby authorize us to do either or both of the following, at our option: (i) immediately stop work on all of your matters, even if to do so would cause prejudice to you or any of your rights, or (ii) withdraw from your representation, at our option, if permitted by applicable law and rules of professional conduct.

### C.    Security Interest

As you know, it is our standard practice to obtain a security interest in our clients' intellectual property in order to secure the payment of our invoices. At your request, we have waived the standard security interest provision in our litigation engagement agreement. In lieu of the security interest provision, you agree that you will promptly pay our invoices and, in particular, that you will make payment within thirty (30) days of the date of the invoice. If you fall behind that payment schedule, then we may, at our option, requirement payment in advance for future work until your account is no longer delinquent.

## IV.    GENERAL PROVISIONS

### A.    E-Mail Notifications

Unless you inform us otherwise in writing, you agree that E-mail is an acceptable means of communicating with you and we will direct communications to the E-mail address that you have provided. If you wish to encrypt your communications with us for security reasons, please E-mail us with your request, and we will work with you to establish encrypted communications. Absent such a request, you agree that there is a reasonable expectation of secrecy in our E-mail communications to preserve your confidences.

B.    **Notices; Successors; Entire Agreement; Amendment; Governing Law**

All notices must be in writing and must be sent by U.S. registered or certified mail, addressed to the addresses last provided by the receiving party.  This Agreement binds and inures to the benefit of your successors and assigns and the successors and assigns of our Firm.  This Agreement contains the entire agreement between you and our Firm.  All preliminary and contemporaneous communications are superseded by this Agreement.  This Agreement may be amended only by a written agreement signed by both you and a partner of our Firm.  This Agreement is governed by, and must be interpreted under, California law, except that United States federal law will govern (i) Section I.E above entitled "Resolution of Disputes; Waiver of Jury Trial" and (ii) issues related to whether matters are substantially related in the context of a conflict of interest, and except that the American Bar Association Model Rules of Professional Conduct will govern your informed written consent and waivers provided in Section II.A above.

C.    **No Accord and Satisfaction**

No statement on a payment check from you or in a letter accompanying a payment check from you is binding on our Firm and we may negotiate such check without being bound by the conditions of any such statement.  If you pay any amount other than the actual amount due to us, receipt or collection of such partial payment does not constitute an accord and satisfaction.  We may retain any such partial payment, whether restrictively endorsed or otherwise, without prejudice to our right to collect the balance properly due.

D.    **Authority; Force Majeure**

If you are an entity, anyone signing this Agreement on your behalf represents and warrants that they are duly authorized to sign on behalf of and to bind your entity.  If we are delayed or prevented from performing any obligation to you by an event of Force Majeure, our performance of such obligation will be excused for a period equal to (i) the duration of the Force Majeure event, or (ii) if longer, the period of delay actually caused by the Force Majeure event.  For purposes of this Agreement, "Force Majeure" means a strike, work stoppage, act of war or terrorism, Act of God, fire, earthquake or other natural disaster, or other occurrence beyond our reasonable control.  We will endeavor to provide you with written notice within ten (10) days after the occurrence of any event of Force Majeure.

E.    **Severability**

If any provision, requirement or obligation contained in this Agreement is deemed unlawful or unenforceable by any court, the remainder of the Agreement shall remain in full force and effect, as though the unlawful or unenforceable portion were removed.

If you agree to the terms of this Agreement, please sign below and return the duplicate originals to the Firm in care of the partner signing below.  We will counter sign it and send you an original for your records.  Before signing this Agreement, you should recognize your right to seek independent counsel of your choice with respect to the terms of this Agreement, including the granting of a security interest described above.  This Agreement will be effective retroactively to the date we first performed services for you.  The date of this Agreement set forth above is for reference only.  We look forward to being of service to you.

KNOBBE, MARTENS, OLSON & BEAR, LLP            AESTHETICS BIOMEDICAL, INC.

By: _____                By: _____
    Partner's Signature

Name of Partner: _Adam Powell_              Print Name: _Todd Rethemeier_

                                            Title: _CFO_